UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO FORTE-PEREZ (A# 022-806-064),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | No. 1:26-cv-05612 DAD SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner is a native and citizen of Cuba who has a final administrative order of removal ("FAOR") to Cuba issued on April 24, 2007, pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) (conviction of two crimes involving moral turpitude). ECF No. 5 at 6-7 (FAOR); id. at 18 (Form I-213). He was subsequently released on February 29, 2008, pursuant to an Order of Supervision ("OSUP") after Immigrations and Customs Enforcement ("ICE") determined there was no significant likelihood of removal to Cuba. Id. at 8-10. Petitioner has a long criminal history in the United States, including most recently a 2021 conviction for possession of heroin for which he was sentenced to one year in prison, and a 2023 arrest for possession of cocaine and narcotics

equipment. Declaration of Deportation Officer C. Rivera ¶ 7, ECF No. 5-1 at 2 ("Rivera Decl.").

On or about March 15, 2026, the Department of Homeland Security ("DHS") revoked Petitioner's OSUP due to his recent criminal history and issued him a "Warning to Alien Ordered Removed or Deported." ECF No. 1 at 7; ECF No. 5 at 24-25. On March 21, 2026, DHS issued Petitioner a Notice of Removal to Mexico. ECF No. 5 at 27. Petitioner refused to sign. Id. On May 14, 2026, DHS issued a Warrant of Removal/Deportation to Petitioner. Id. at 20-23. On several dates—June 3, 2026, June 10, 2026, June 24, 2026, and July 1, 2026—DHS read and served Petitioner with a Warning for Failure to Depart (Form I-229A) that laid out Petitioner's obligations under 8 U.S.C. § 1231(a)(1)(C) to make timely, good-faith efforts to assist in removal and not act to prevent removal. Rivera Decl. ¶10-13. Petitioner refused to sign each time. Id. On July 6, 2026, DHS issued Petitioner another Form I-229A along with a "Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g)," id. at 31-26, the latter of which informed Petitioner that DHS was extending the removal period in his case pursuant to 8 U.S.C. § 1231(a)(1)(C). Id.

Petitioner filed the instant § 2241 petition on July 20, 2026. ECF No. 1. Petitioner raises four causes of action which, liberally construed, make up two primary claims: (1) Respondent's revocation of his OSUP did not comply with 8 C.F.R. § 241.13 procedures; and (2) his detention violates 8 U.S.C. § 1231(a)(6) because removal to Cuba or Mexico is not reasonably foreseeable. Id. at 6-8. To support the second claim, Petitioner lists the dates of his periods of post-removal detention to demonstrate the unlikelihood of removal to Cuba and the prolonged nature of his cumulative detention. Id. at 7. By way of relief, he seeks his immediate release. Id. at 9.

Respondent counters that Petitioner's failure to cooperate with his removal to Mexico has extended the removal period under 8 U.S.C. § 1231(a)(1)(C). ECF No. 5 at 4. Respondent further argues that removal to Mexico is reasonably foreseeable and that the Mexican government has a "standing agreement" with the United States to accept Cuban nationals. Id. at 3-4. Finally, Respondent asserts that under Zadvydas v. Davis, 533 U.S. 678, 687 (2001), Petitioner bears the burden of establishing his removal is not reasonably foreseeable, and that he cannot meet that burden because he refuses to cooperate and has not claimed a fear of removal to Mexico. Id. at 4.

////

## II. Immigration Detention Framework After a Final Order of Removal

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After this 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692. In order to avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

"Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal." Ruiz-Acosta v. Cent. Valley Annex, No. 1:26-CV-04371-DAD-JDP (HC),

2026 WL 1846727, at *2 (E.D. Cal. June 26, 2026) (quoting Martinez v. Bondi, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025)). Where, as here, Petitioner was issued a final order of removal, detained, and subsequently released and then re-detained, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed" pursuant to 8 C.F.R. § 241.13(i)(2). Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. 2025); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

## III. Analysis

### A. Petitioner is Not Subject to 8 U.S.C. § 1231(a)(1)(C)

The parties agree that Petitioner's April 24, 2007, order of removal is final. This shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed. Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Respondent's claim that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(1)(C) is baseless. That provision permits tolling of the 90-day removal period if the noncitizen "conspires or acts to prevent the [noncitizen's] removal *subject to an order of removal*." 8 U.S.C. § 1231(a)(1)(C) (emphasis added). Petitioner has no order of removal to Mexico. As the assigned District Judge explained in another case involving the government's attempt to remove a Cuban national to Mexico: "Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous[.]" Obando Vargas v. Blanche, No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026)).

Respondent's reliance on Lema v. I.N.S., 341 F.3d 853 (9th Cir. 2003) is inapposite for similar reasons. There, the Ninth Circuit upheld the continued § 1231(a)(1)(C) detention of an Ethiopian national who refused to effectuate his order of removal to Ethiopia. The Court explained that "the risk of indefinite detention that motivated the Supreme Court's statutory interpretation [of § 1231(a)(6)] in Zadvydas does not exist when the [noncitizen] . . . controls the clock." Lema, 341 F.3d at 856 (quoting Pelich v. I.N.S., 329 F.3d 1057, 1060 (9th Cir. 2003)). But here, Petitioner received a Zadvydas-type release over eighteen years ago based on ICE's finding that his removal to Cuba was not reasonably foreseeable. Any concern that Petitioner was delaying his removal to Cuba to manipulate the clock has long since passed.

Beyond the absence of a removal order to Mexico, Respondent cites no authority for DHS' ability to restart the removal period pursuant to 8 U.S.C. § 1231(a)(1)(C) nearly two decades after its lapse and Petitioner's subsequent release on OSUP. Although DHS issued Petitioner a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g), that regulation makes clear that such notice extends the initial removal period only while it is still active:

> The removal period shall run for a period of 90 days. However, the removal period is extended under section 241(a)(1)(C) of the Act if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's removal subject to an order of removal. [DHS] will provide such a[] [noncitizen] with a Notice of Failure to Comply, as provided in paragraph (g)(5) of this section, *before the expiration of the removal period*.

8 C.F.R. § 241.4(g)(1)(ii) (emphasis added); see also id. § 241.4(g)(5)(iii) ("[T]he Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, *if the removal period has not yet expired[.]*" (emphasis added)). The Warning for Failure to Depart (Form I-229A) notices that Respondents served on Petitioner several times during his most recent detention contain similar language:

> Section 241(a)(1)(C) provides for the extension of the statutory removal period if the alien refuses, *during the removal period*, to make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires or acts to prevent the alien's removal

subject to an order of removal.

ECF No. 5 at 29 (emphasis added). In sum, these implementing regulations authorize continued, mandatory detention where a noncitizen fails to cooperate with an order of removal *during the removal* period—a period that, in Petitioner's case, expired roughly eighteen years ago. For all these reasons, neither 8 U.S.C. § 1231(a)(1)(C) nor its implementing regulations authorize Petitioner's detention.

**B. Respondent Has Not Shown that Removal is Reasonably Foreseeable**

Respondent also argues Petitioner bears the burden of demonstrating that his removal to Mexico is not foreseeable and has not met that burden. Based on the Petitioner's release on OSUP in February 2008 and that ICE's revocation of that release in March 2026, the undersigned finds that the burden shifting framework of Zadvydas does not apply to this case. See Vu, 2025 WL 3114341, at *5. Instead, Respondent has the burden of demonstrating that there is a significant likelihood that the Petitioner may be removed to Mexico. See 8 C.F.R. § 241.13(i)(2).

Respondent asserts that Petitioner is subject to removal to the third country of Mexico and that the standing agreement between the two countries has resulted in "over 6,000 successful removals of Cuban Nationals in fiscal years 2025 and 2026." ECF No. 5 at 3 (quoting Navarro v. Lyons, No. CV 26-10876-WGY, 2026 WL 816791, at *1 (D. Mass. Mar. 25, 2026)). Because Respondent failed to provide the Court with a copy of any agreement with the government of Mexico to accept Petitioner, the undersigned finds that Respondent has not met their burden of demonstrating that there is a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future. "[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [Petitioner] any time soon." Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025); see also Ruiz-Acosta, 2026 WL 1846727, at *3 (finding same where "respondents failed to indicate what steps the government has taken to effectuate petitioner's removal to Mexico or that Mexico is likely to accept this petitioner specifically."). On this basis alone, Petitioner's detention is unlawful and he must be released. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a

finding that removal was not reasonably foreseeable).

**C. Petitioner Has Established Violations of 8 C.F.R. § 241.13(i)(3)**

Finally, Respondent claims ICE revoked Petitioner's release "due to recent criminal history and violations of OSUP conditions." ECF No. 5 at 2. There is no Notice of Revocation of Release in the record. But based on this limited information, the undersigned treats Petitioner's re-arrest as a revocation under 8 C.F.R § 241.13(i)(1), which states: "Any [noncitizen] who has been released under an order of supervision . . . who violates any of the conditions of release may be returned to custody[.]" 8 C.F.R. § 241.13(i)(1). DHS must follow certain revocation procedures, including notifying the noncitizen of the reasons for revocation of release and "conduct[ing] an initial informal interview promptly . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Courts have found these regulations to be enforceable in habeas actions. See Nguyen, 788 F. Supp. 3d at 152 ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted); Nguyen v. Charles, No. 1:25-CV-01592-TLN-CSK, 2025 WL 3492117, at *2 (E.D. Cal. Dec. 4, 2025) (noting that 8 C.F.R. § 241.13(i) "protect[s] important due process rights owed to non-citizens.").

Respondent does not rebut Petitioner's allegation in his verified petition that DHS revoked his OSUP in violation of 8 C.F.R. § 241.13.[1] Petitioner specifically cites Respondent's failure to comply with the regulatory requirements to "conduct[] timely custody review, provide written notice of determination and allow the detainee to subject evidence and arguments." ECF No. 1 at 7. Courts have found such violations of the § 241.13(i)(3) procedures sufficient to warrant habeas relief. See Garcia Bonilla v. Warden, No. 1:26-CV-02765-DJC-AC, 2026 WL 1113880, at *1 (E.D. Cal. Apr. 24, 2026) (granting habeas petition where, even assuming that Petitioner's arrest could have violated an OSUP condition, "there is no indication that Respondents followed the

---

[1] A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987)).

necessary procedures to revoke Petitioner's release by providing him an opportunity to contest that he did not violate his order of supervision."); Phan v. Beccerra, No. 2:25-cv-1757 DC JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on due process claim where respondents failed to provide the § 241.13(i)(3) informal interview upon revocation of OSUP and collecting cases). Accordingly, the undersigned finds Petitioner's unrebutted allegations regarding the revocation of his release without 8 C.F.R. § 241.13(i)(3) procedures provide independent due process grounds to grant habeas relief.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent be directed to immediately release Petitioner HUMBERTO FORTE-PEREZ (A# 022-806-064) on the same conditions of release in place at the time of his re-detention on or around March 15, 2026.
3. Respondent be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.
4. Respondent be prohibited from re-detaining Petitioner without first complying with 8 U.S.C. § 241.13.
5. The Clerk of the Court be directed to:
    a. Serve the California City Correctional Facility with a copy of any order of release; and
    b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 6, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE